A. S. GENECOV et al., Appellants,

v.

Charles MARCUS, Appellee.

No. 15013.

Court of Civil Appeals of Texas.

Dallas.

Dec. 2, 1955.

Rehearing Denied Jan. 6, 1956.

Touchstone & Bernays and Porter Johnston, Dallas, for appellants.

Strasburger, Price, Kelton, Miller & Martin and Royal H. Brin, Jr., Dallas, for appellee.

CRAMER, Justice.

This is a duly perfected appeal from an order overruling appellants' separate pleas of privilege in a personal injury damage suit. Appellee Marcus was employed by appellants Genecov et al. to see that certain buildings in Dallas remained leased and that complaints of tenants were investigated and remedied; also to contract for necessary repairs, after report and permission from appellants if the cost is over $100, and without permission if the cost is under $100.

The accident occurred in Dallas County, about 4:00 P. M. Nov. 27, 1951 (a clear day), after a roof-leak complaint had been made by a tenant in one of the buildings, and after appellant Genecov had notified appellee Marcus to investigate such complaint. After the investigation, Marcus called a roofing man who examined the roof. In order for the roofing man and Marcus to get to the point of inspection, they went over roofs of different levels and crossed over a board walk at the corner of another building. The depth under the walkway was about 5 feet, bridged by a 2x8 board about 8 feet long, laid diagonally over the gap. After the roofing man crossed, appellee Marcus started over, but the board, while he was on it, broke and he fell some 5 feet to the lower roof, resulting in the injuries made the basis of this action.

Appellants brief five points of error. Point 1 asserts that subd. 9 (not 9a) of our venue statute, Art. 1995, Vernon's Ann.Civ. St., applies to the facts in this case. Subd. 9 confers venue on the courts of the county where an injury is received through the active negligence, crime, or trespass of the defendant; subd. 9a confers venue on the county where the negligence, active or passive, occurs.

On the date of the accident here involved (Nov. 27, 1951) subd. 9 of Art. 1995, supra, was in effect. Subd. 9a, relied on by appellants was not effective until ninety days after May 27, 1953, date of adjournment of the 53rd Legislature, to wit, August 25, 1953. This suit was filed Nov. 25, 1953, after the effective date of subd. 9a. Under such facts the rule, in our opinion, is set out in 43-B Tex.Jur., p. 124, Venue, sec. 13, as follows: "The venue of an action is ordinarily controlled by the law in effect at the time of the institution of the suit." Citing Hausman Bros. Packing Co. v. Allen, Tex.Civ.App., 59 S.W.2d 246; San Marcos Baptist Academy v. Burgess, Tex.Civ.App., 292 S.W. 626; San Marcos Baptist Academy v. Brittain, Tex.Civ.App., 292 S.W. 629; Daniel v. Jones, Tex.Civ.App., 103 S.W.2d 437. See also Covington v. Covington, Tex.

Civ.App., 271 S.W.2d 849, and 39 Tex.Jur. 52, statutes, sec. 27; Bristow v. Nesbitt, Tex.Civ.App., 280 S.W.2d 957.

█ Under the above authorities we hold that subd. 9a, Art. 1995, V.A.C.S., being in effect when this suit was filed, authorized suit in the county where the negligence occurred, whether such negligence was active or passive, and supports the trial court's order against the attack made in point 1. Point 1 is overruled.

Points 2–5 inclusive assert that: (2) If subd. 9a applies, then there was no negligence of appellants, passive or otherwise; (3) there was no evidence to raise the issue of active negligence or trespass by appellants in Dallas County; (4) the evidence is wholly insufficient to support a finding of crime, offense, or trespass in Dallas County against either appellant; and (5) the judgment is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Appellee Marcus alleged six acts of negligence, to wit: "(a) In failing to maintain the premises in question in a reasonably safe condition. (b) In failing to maintain the catwalk where plaintiff fell in a reasonably safe condition. (c) In failing to advise plaintiff that the board or plank which broke with plaintiff was decayed or rotten. (d) In failing to warn plaintiff that the catwalk in question would not hold his weight. (e) In having the catwalk at the place where plaintiff fell. (f) In not replacing the decayed, rotten board or catwalk which fell with plaintiff."

█ The plea of privilege placed on appellee the burden of proof on each issue of negligence pled and, in order to maintain venue in Dallas County, the burden to prove one of such acts together with the complementary issue of proximate cause by a preponderance of the evidence.

█ The only question is whether the evidence raised an issue of fact on any one of such separately alleged acts of negligence and on the proximate cause issue in connection therewith.

Charles Marcus was the only witness on the hearing. His testimony was confined solely to issues on venue and was, in addition to the matters set out in the short statement of facts above, in substance that the accident occurred on the roof of buildings owned by B. M. & R. Interests of which Genecov is one of the trustees; that he called a roofing company to investigate the condition of the roof; after the roofing company investigated the condition of the roof, they asked him to look at it so he could report to Genecov; he and the roofing man started to the place of damage to the roof; in going there they had to cross a plank or board theretofore placed across a corner of the building; the roofer went first and had crossed safely; he (Marcus) followed, but when he reached about the center of the board it broke and he fell to a lower level of a roof about five feet below; that Jones, the man who preceded him, weighed about 200 lbs. and he (Marcus) about 175 lbs. He described the board as follows: "It looked to be a steady board. And the fact that the man walked across in front of me and I followed him—He had been across the board previously more than one time, going to and from this spot on the roof, and it appeared apparently safe when I stepped upon it." Marcus detailed his injuries and disabilities, the treatment he had received therefor, his lost time in the hospital, the medical bills of $3,000, etc.; and stated he was still taking treatment. He estimated his loss at $20,000. Testified that he looked after not one building, but a block of buildings; he had never been on the roof involved before. He testified as follows:

"Q. Had you been called on prior to that time by Mr. Genecov, as trustee or owner of that building, to do anything about the maintenance of the building or anything of that kind? A. On occasions when the tenants complained of things, I had been called; where there were major repairs, I had been called on to employ someone to take care of those repairs. I know that up the street farther they had had a number of roof leaks and the tenant had complained and Mr. Genecov had instructed me to have

the roof repaired, and I hired someone to put a new roof on the building, never going on the roof myself to inspect it, because there were so numerous leaks there that they knew that it needed a new roof, because of the complaints of the tenant.

"Q. Were you employed to keep the buildings in repair, or were you called on specific occasions, or what were the facts about that? A. I was employed to make leases, actually, with the tenants. As leases expired, I negotiated leases with the tenants for new leases. I was not to keep the buildings in repair. * * * I was retained by B. M. & R. Interests at a monthly retainer basis.

"Q. Was it, though, within your province to see about the painting or repair of the buildings under that agreement or arrangement? A. It was not my duty to do that.

"Q. Had you seen to the execution of leases by the B. M. & R. Trust for that property prior to that? A. For various spaces in that property, yes. There are approximately twenty-five or thirty tenants in that particular piece of property that B. M. & R. Interests owns, and I had negotiated a number of leases in that block. * * * The roof we were actually going to inspect was over on the corner. The way to get up there, there was a stairway that went up to the roof to this walkway that was situated on top of the roof, which extended over and made the other building accessible by that walkway.

"Q. Are you talking now about the board? A. Well, there was a board walkway across this corner and there was also a walkway leading to this board on the roof.

"Q. The walkway that had been built on the building led to this board? A. Yes, sir.

"Q. And the board was across there leading to the other— A. To the other roof. * * *"

On cross-examination, material here, he added that he fell on a building he was walking over in order to get to the Harrell roof. The roofing man had looked at the roof in question and called him before he made the trip to see it with him. It was not his duty to inspect, only to contract for repairs, and " * * * I was instructed to employ reputable persons to make repairs, which I did. That would not necessitate any inspection after a repair was made. All of those people stood behind their repairs. I was not to investigate or to examine a repair after it had been made to determine whether or not it was proper. In order to see if a repair was proper to a roof installation would necessitate going upon that roof and examining the roof to see that it was done properly. I am a lawyer, not a construction man. I could not have told whether it was a proper installation if I had gone up there, and it was not my duty to do so.

"Q. You authorized the repairs? A. That is correct.

"Q. And you saw that the roofing man in this particular instance, that you were going to have this repaired, you would see to it that he went there and at least went through the motion of repairing it? A. I would see that he had workmen there that were doing the work, yes. * * * A. If we had a repair that was done and the tenant reported it was improperly done, I would have called the contractor back up and told him to make the corrections that were necessary.

"Q. I will put it this way—It was your duty to see to it that the repairs were made? A. It was my duty to see that repairs were contracted to be made. It was not my duty to supervise or inspect the repairs once they were begun. * * *

"Q. And you were in the process of finding out just what needed to be repaired at the time you fell and got hurt? A. That is correct."

Marcus further testified that the accident occurred about 4:00 P. M. on a mild clear day; there was nothing wrong with his vision; he could see where he was walking; after the 2x8 broke, he was helped up; he had no immediate sharp pain but

was shaken up a bit, nervous and shaky immediately after the fall; he had never been on the roof and did not know whether Genecov or Roosth had ever been on it before; he is paid $250 per month; no one told him to inspect the building; he did not know how long the 2x8 had been there; he had a prior injury in the Service in 1944 to his right leg; a piece of metal from a mine explosion went through his right knee joint; he gets 30 percent compensation ($50 per month).

Considering the record as a whole, we conclude that appellant was not an insurer of appellee's safety, and in the performance of his duties under his employment contract he assumed the risk of latent defects such as the one here involved; and, as his pleading discloses, based his cause of action on specific acts of negligence proximately causing his injury.

The material evidence, recited in substance above, does not raise the issues requested. The requested issues (a) and (b) involve the maintenance of the walkway in a reasonably safe condition. The owners lived in Tyler, Texas. Repairs were to be contracted for by appellee Marcus based on complaints of those who leased the building. The record is absent any evidence of the condition of the 2x8 either before or after it broke. Nor was there evidence of the length of time it had been in its then location. The evidence does show that the heavier man had theretofore crossed it several times in safety in making his investigation before he called Marcus; and on the occasion in question had crossed it safely just ahead of Marcus. The evidence here is not sufficient to raise an issue of fact on the allegations in subdivisions (a) and (b). Subdivision (c) asserts negligence in appellants' failure to advise appellee that the plank in question was decayed and rotten. There is nothing in the record of a decayed or rotten plank, or as to any other condition of the board either before or after the accident. The unexplained breaking of the 2x8 did not raise the issue of appellants' failure to advise appellee, nor the issue of proximate cause. Subdivision (d) involves the failure to warn appellee that the 2x8 would not hold his weight. The record shows the plank did hold the weight of a heavier man several times before Marcus crossed it, and immediately before Marcus started across. Evidence which goes no further than to show the break, as here, and in no manner shows the condition of the 2x8 before or after such break, does not show the 2x8 was actually known, or by the exercise of ordinary care should have been known, to be unsafe for a man of 175 lbs. Subdivision (d) does not raise an issue of negligence of appellants. Subdivision (e) involves the placing of the catwalk where plaintiff fell. The evidence shows permanent catwalks over the buildings making up the city-block of buildings then owned by Genecov et al., and that the 2x8 board across the short distance over the 5-foot lower level was necessary to a proper inspection of such group of buildings, if and when such inspection was necessary. The evidence did not raise an issue of negligence and proximate cause for the trier of the facts under subdivision (e). The act of negligence set out in subdivision (f) assumes that the evidence raises the issue of the board being rotten and decayed and that it was negligence not to replace it. Except for the board breaking, there is no evidence of its being rotten or decayed, and in our opinion does not raise the issue of the 2x8 being rotten or decayed for such length of time as to be noticed by appellants.

Under the record we sustain appellants' points 2 to 5.

For the reasons stated, the trial court's judgment is reversed and here rendered sustaining appellants' plea of privilege with instructions to the trial court to transfer the venue of this cause to the District Court of Smith County.

Reversed and rendered with instructions.